THARP *v.* PAGE.

Opinion delivered March 4, 1899.

1. EVIDENCE—HEARSAY.—It is error, in a suit by a wife to recover damages for the seizure and sale under execution of her property to pay her husband's debts, to admit proof of a statement of the husband, made before the litigation arose, to the effect that the property belonged to the wife. (Page 232.)

2. SUBPŒNA DUCES TECUM—PRACTICE.—The denial of a motion for a subpœna duces tecum to bring up certain account books will not constitute error if the record fails to show the purpose for which it was desired to use the books as evidence. (Page 232.)

Appeal from Hempstead Circuit Court.

RUFUS D. HEARN, Judge.

*J. H. McCollum* and *C. V. Murry,* for appellants.

The statement that the firm owed Mrs. Page $500 for services as bookkeeper was open to suspicion (64 Ark. 377), and the subpoena duces tecum should have been granted to bring the books into court. Oglesby's testimony was incompetent as hearsay. The first instruction given for appellee was erroneous in that it withdrew from the jury the question of the ownership

of the property. 14 Ark. 530; 16 Ark. 569; 31 Ark. 699; 37 Ark. 580; 59 Ark. 417; 24 Ark. 540; 33 Ark. 350; 36 Ark. 117; 45 Ark. 256. The burden was on the wife to show *bona fides* of the transaction with her hnsband. 46 Ark. 550; Bump, Fr. Conv. § 288; Wait, Fr. Conv. §§ 300–1; 94 U. S. 580; 6 Am. St. Rep. 668; 19 *id.* 322; 42 *id.* 661.

*Greene & McRae*, for appellee.

The evidence is sufficient to uphold the findings of the jury, both as to ownership and value of goods. 51 Ark. 457; 46 Ark. 141; 57 Ark. 577; 49 Ark. 381; 62 Ark. 326. Simple demand for production of books is not equivalent to a motion for subpoena duces tecum. L. R. 2 Eq. 59; 15 Fed. 712; 3 Dill. 566; 70 Cal. 638; 72 Mo. 83; 1 Tuck (N. Y. Surrogate) 39. Granting of subpoena duces tecum is discretionary, and the action of the trial court will not be reviewed unless this discretion is abused. 10 Ark. 418; Sand. & H. Dig.; 2932. The testimony of Oglesby was competent, since the declaration of Page was part of *res gestae.* 20 Ark. 592; 1 Gr. Ev. § 113. No specific objection was pointed out to this evidence below, and hence the ruling will not be reviewed. 25 Ark. 434; 28 Ark. 8. Even if this evidence was not competent, it was merely cumulative, and its admission was not prejudicial or reversible error. 58 Ark. 125; 56 Ark. 37; 58 Ark. 446.

BATTLE, J. Certain creditors of W. L. Page & Co. recovered judgments against them, and sued out executions, to satisfy which the sheriff, to whom they were directed, levied upon a stock of groceries in Hope, in this state, as the property of W. L. Page. His wife, Emma R. Page, claimed the goods; and P. A. Tharp, W. A. Rhodes and Carl & Tobey Company executed five several bonds to the sheriff, by which they undertook to indemnify him "against all damages which he may sustain in consequence of the seizure or sale of said stock of groceries under execution; also to pay any claimant of the said goods the damages he may sustain in consequence of such seizure or sale." After this he sold the property under the executions, and Mrs. Page then brought this suit on the bonds

to recover its value, which she alleged to be $863.29, and the defendants denied her ownership.

The issues in the action were tried by a jury. In the trial evidence was adduced tending to prove, substantially, the following facts: W. L. Page & Co., a firm composed of W. L. Page and Mrs. M. P. Baldwin, his sister-in-law, conducted a prosperous business in Hope for about five years. Page was the sole manager. David Baldwin, Mrs. Baldwin's husband, worked for the firm, while they were in business, and represented his wife. In November, 1894, when the firm was much in debt, Page sold all their property to Carl & Tobey Company for $1,645, and out of this paid to the purchaser $545 in satisfaction of a debt which his firm owed it, $400 or $500 to Mrs. Chapman, his wife's sister, in return for money borrowed of her, $150 to Mrs. Baldwin, and $500 to his wife for keeping books for his firm. Page and his wife testified that he employed her to keep books for his firm, and agreed to pay her for such services at the rate of $10 a month, and that she kept the books for about fifty months, and that $500 were paid for such services. He testified that she received nothing for the labor until the payment of the $500, and no credit on the books of his firm for any amount. Baldwin testified that the books of the firm were kept at its store, except for two or three days at the end of the month, when Page would take the books to his house, and his wife would make out monthly bills; that she never worked on the books at the store; that he never knew of a contract to pay her anything, and never heard of it, until, sometime after the dissolution of the firm, in an action of Beal & Fletcher Grocery Company against W. L. Page & Co., he heard Page testify that he paid his wife $500 for keeping books.

In March, April, or May, 1895, Page purchased for his wife, with the $500 paid to her and $600 which she borrowed from her sister, Mrs. Chapman, a stock of goods, and she commenced business with the same as her stock in trade, and continued until June, 1895, when the goods were seized under executions against W. L. Page & Co., and sold as before stated. She commenced and did business as Page & Co.; and W. L. Page managed the business for her.

S. R. Oglesby, during the trial, was allowed to testify, over the objections of the defendants, that he knew about the time the firm of Page & Co. began business; and that W. L. Page told him that his wife, Emma R. Page, composed the firm of Page & Co.

The jury returned a verdict in favor of the plaintiff for $956.66; and the court rendered judgment in her favor against the defendants for that amount.

The testimony of Oglesby, as adduced, was incompetent. As the statement of Page, to which he testified, was made at a time when Mrs. Page's title to the goods purchased for her was unquestioned, and at a time when there was apparently no occasion for Page to make a false statement, it tended to strengthen the evidence adduced to sustain her claim; and as the good faith in which the property was purchased for and held by her is doubtful, it was prejudicial to the defendants.

During the pendency of this action, and before the trial, the defendants asked the court for a subpœna duces tecum, requiring W. L. Page to produce at the trial all the books of W. L. Page & Co. to be used as evidence, and the court denied it. As the record fails to show in what way they wished to use the books as evidence, it does not appear that the court committed any error in denying the motion. It was not the duty of the court to grant the request of the defendants merely because they made it. Had they asked for the subpœna for the purpose of showing that the books were not in the handwriting of Mrs. Page, but in that of other persons, and in that way that she was at no time the bookkeeper of W. L. Page & Co., the subpœna should have been granted.

For admitting the testimony of Oglesby, the judgment of the trial court is reversed, and the cause is remanded for a new trial.