SOUTHEAST POWER & LIGHT COMPANY *v.* McCARROLL,
COMMISSIONER.

4-6015 140 S. W. 2d 1001

Opinion delivered May 6, 1940.

*A. B. Shafer*, for appellant.

*Frank Pace, Jr.*, and *Lester M. Ponder*, for appellee.

HOLT, J. Appellant seeks to restrain appellee, the
Commissioner of Revenues of the state of Arkansas,
from collecting an additional income tax from it under
the provisions of act 118 of the General Assembly of
1929, p. 573, as amended by act 220 of the Acts of 1931,
p. 695.

In its complaint, appellant alleged that it is a foreign corporation organized under the laws of Delaware, but has complied with the laws of this state, is operating in this state, and has its principal place of business at West Memphis, Arkansas.

It further alleged that it has a branch office in St. Louis, Missouri; that it owns the majority of stock in four other companies, two of which are located in and are operating under the laws of this state, one is located in Alabama, and the other in Louisiana; that it "has regularly, and particularly for the years 1936, 1937 and 1938, made its income tax return for each of said years to the Commissioner of Revenues of the State of Arkansas and has reported in such returns the net income received by it from the West Memphis Power & Water Company, a domestic corporation, and from the Southeast Arkansas Telephone & Power Company, a domestic corporation, and has paid the annual income tax thereon for each of said years to said Commissioner of Revenues; that, notwithstanding said returns and payment of income tax thereon, the said Commissioner of Revenues illegally claims that the plaintiff should pay an income tax upon its revenues received from the corporations owned by it in the state of Louisiana and in the state of Alabama, and has or is threatening to levy against the plaintiff illegally an assessment and additional tax of one thousand one hundred ten and 05/100 dollars ($1,110.05) for the year ending December 31, 1936, arising out of two per cent. levied upon the income of the plaintiff received from said Louisiana and Alabama public utility corporations and is threatening to illegally assess and levy an additional tax of nine hundred fifty-six and 39/100 dollars ($956.39) for the year ending December 31, 1937, upon the plaintiff, the same arising out of a levy of two per cent. upon income received from said Louisiana and Alabama corporations and is illegally threatening to levy and assess an additional tax upon the plaintiff for the year ending December 31, 1938, of seven hundred eighty-five and 81/100 dollars ($785.81), the same arising out of a levy of two per cent. upon income received from said Louisiana and Alabama corporations, and that un-

less restrained by order of this honorable court will make said assessments and levy and add thereto interest as a penalty for the nonpayment of the same. . . .''

And further ''That said defendant, as Commissioner of Revenues of the state of Arkansas, claims that because of the following facts, to-wit:

''(1) That stockholders and directors meetings of the plaintiff corporation are held in the state of Arkansas and Missouri;

''(2) That the corporate records and financial books of accounts are kept in Arkansas, except that a duplicate stock record is kept in the office of the corporation at Wilmington, Delaware;

''(3) That dividends from its corporation holdings of stock in its various companies are received in Arkansas;

''(4) That interest from the corporations' loans, advances, and accounts receivable are received in Arkansas;

''(5) That decisions of the officers and directors of the corporation with regard to the internal management of the company are made either in the state of Arkansas or the state of Missouri;

''(6) That the plaintiff does not pay a state income tax to any state except Arkansas, but does make annual statements and pay a franchise tax thereon to the state of Delaware;

''(7) That the dividends of the plaintiff are voted by its directors either in the state of Arkansas or in the state of Missouri;

''(7a) That in the income tax returns made by the plaintiff to the state of Arkansas it lists itself as a Delaware corporation with its principal place of business at West Memphis, Arkansas, for state tax purposes;

''(8) That the contracts of the plaintiff are authorized either in the state of Arkansas or in the state of Missouri;

"(9) That only two out of seven directors reside in the state of Arkansas, a majority of the directors residing in the state of Missouri;

"(10) That the exemption of fifteen hundred dollars ($1,500) allowed by state law to a corporation doing its entire business in this state was deducted by the plaintiff on its returns for each of the years 1936, 1937 and 1938, the plaintiff having overlooked a provision of the statute which entitled it to claim only a *pro rata* part of said exemption,

"The plaintiff corporation is subject to pay to the state of Arkansas an income tax upon all of its revenues except those derived as dividends from domestic corporations, making separate income tax returns as herein set out, notwithstanding and despite the provisions of act 118 of the Acts of 1929 (Income Tax Act) of the state of Arkansas, which requires that foreign corporations, such as the plaintiff is, shall pay only upon that portion of their net income derived from business transacted within the state."

It further alleged that appellee's attempt to levy the tax constitutes an illegal exaction and results in a denial of the equal protection of the laws and is taking appellant's property without due process of law and contrary to the provisions of both the state and the federal constitutions, and prayed for a permanent injunction against the collection of the tax.

Appellee demurred to the complaint on the ground that it failed to state a cause of action.

The trial court sustained the demurrer and upon appellant's refusal to plead further, dismissed its complaint. This appeal followed.

Since this appeal comes from the action of the court in sustaining appellee's demurrer to the complaint, we must treat all material allegations in the complaint as true. *Dillinger* v. *Pickens, ante,* p. 218, 138 S. W. 2d 388.

To summarize appellant's situation, as reflected by the allegations in the complaint, it appears that it is a Delaware corporation and, after complying with the

laws of this state, transacts substantially all of its business in this state from its principal office in West Memphis, Arkansas. Its records and books of accounts are kept at West Memphis. It owns the majority of the capital stock of four public utilities, two of which operate in Arkansas and the others in Alabama and Louisiana. It receives dividends from the stock which it owns in these four companies and also interest on loans which it makes to these four companies, all at its West Memphis office. Some of appellant's directors meetings are held at West Memphis, but since five of its seven directors reside in Missouri, meetings are occasionally held in St. Louis, Missouri. It pays no state income tax other than to the state of Arkansas. It deducted its $1,500 exemption allowed by the Arkansas income tax law to a corporation doing its entire business in this state for each of the years upon which additional assessments have been made. On its income tax returns for each of the years in question, appellant lists its principal place of business as West Memphis, Arkansas.

Appellant earnestly contends here that the revenue commissioner cannot legally exact from it under the provisions of act 118 of the Acts of 1929, a two per cent. tax on its income from dividends and interest received by it at its West Memphis office from the two operating companies located in Alabama and Louisiana. We think it clear from this record that appellant is purely a holding company and not an operating company. It transacts substantially all of its business from its West Memphis office. It operates no company or business outside of the state of Arkansas.

We think the principles of law announced in the comparatively recent case of *Wiseman* v. *Interstate Public Service Company,* 191 Ark. 255, 85 S. W. 2d 700, apply here. In that case the Interstate Public Service Company was a corporation organized and existing under the laws of Arkansas and this court held that the Interstate Public Service Company was a holding company and as such liable for the state income tax upon its total income even though most of that income was not derived from sources within the State of Arkansas. There this court said:

"Under the agreed statement of facts appellee 'owns stock in a number of utility concerns in Texas. It also owns a water and light plant at Foreman, Arkansas,' which it operates from its Bay City, Texas, office. It is simply a holding company for the stock owned by it in the Texas corporations. We do not find from the stipulation that it does any business in Texas, except to receive its dividends on the stock owned by it, keep its books of account there, and operate its Foreman, Arkansas, plant from its Texas office. It is not stipulated that it owns or operates any of the corporations in which it owns stock in Texas, but that it simply receives its dividends therefrom, and keeps its books in Texas.

"It is further stipulated that $176,000 of its income out of a total gross income from all sources of $197,975.35, is from dividends on its corporate holdings. It had gross income from Foreman of $2,995.02. It is not shown from what source the difference in gross income came. We therefore conclude that appellant is not carrying on any business outside the State of Arkansas for gain or profit, except it operates the Foreman, Arkansas, plant from its Texas office."

Thus it appears that this court held in that case that the Interstate Public Service Company was not carrying on any business outside the State of Arkansas for gain or profit, although its entire income was derived from dividends received in the State of Texas.

Under the conceded facts in the instant case, we think the dividends and interest received by appellant are received by it at its general place of business at West Memphis, Arkansas, where all of its books and records are kept and where substantially all of its business is transacted. We are clearly of the view, therefore, that appellant is liable for the tax in question.

Appellant, however, earnestly insists that the opinion of this court in the recent case of *McCarroll* v. *Gregory-Robinson-Speas, Inc.*, 198 Ark. 235, 129 S. W. 2d 254, 122 A. L. R. 977, is controlling and relieves it of the tax exaction sought by the revenue commissioner in this case.

It is our view, however, that that case does not control here. That case had to do with domestic operating corporations which did business not only within but without the State of Arkansas. It dealt with operating companies and not holding companies.

Finally appellant urges that the rule laid down in the case of *Wiseman* v. *Interstate Public Service Company, supra,* cannot control here for the reason that in that case the Service Company was a domestic corporation, whereas in the instant case appellant is a foreign corporation doing business in Arkansas.

We think, however, that under the statutes of this state this distinction cannot prevent a foreign corporation, such as appellant, from submitting itself to the same burdens of taxation as a domestic corporation where it occupies the same relationship toward the state as a domestic corporation which has assumed its burdens of taxation under our laws.

Section 15 of Act 118 of the Acts of 1929 provides: "If the entire trade or business of a nonresident individual or a foreign corporation is carried on in the jurisdiction of this state, the tax imposed by this Act shall be computed upon the entire income of such nonresident individual or corporation. . . ."

As pointed out previously, in the instant case, appellant is carrying on its entire business within the State of Arkansas from its West Memphis office. It carries on no business outside of the state and we think it, therefore, liable for the same burdens of taxation as was imposed by this court upon the Interstate Public Service Company, *supra,* a domestic corporation, by virtue of the fact that it carried on its business in this state and was no more than a holding company. We therefore hold that authority for the tax against appellant, a nonresident corporation doing business in Arkansas, is found in the above § 15 from the State Income Tax Law (Act 118 of the Acts of 1929), and that such was the intent of the legislature.

The Supreme Court of the United States in the case of *First Bank Stock Corporation* v. *Minnesota,* 301 U. S.

234, 57 S. Ct. 677, 81 L. Ed. 1061, 113 A. L. R. 228, in affirming the Minnesota Supreme Court, where the facts were that Minnesota levied a tax upon the total taxable property of the defendant, a Delaware corporation, including shares of stock in Montana and North Dakota where a tax had already been paid on this particular stock, said:

"Appellant is qualified to do business in Minnesota, and in fact transacts its corporate business and fiscal affairs there. It maintains a business office within the state and holds there its meetings of stockholders, directors, and their executive committee. It is the owner of a controlling interest in the stock of a large number of banks, trust companies, and other financial institutions, located in the Ninth Federal Reserve District. The stock certificates are kept in Minnesota, where appellant receives dividends declared by its subsidiaries, and where it declares and disburses dividends upon its own stock. . . .

"Appellant thus maintains within the state an integrated business of protecting its investments in bank shares, and enhancing their value, by the active exercise of its power of control through stock ownership of its subsidiary banks.

"Appellant is to be regarded as legally domiciled in Delaware, the place of its organization, and as taxable there upon its intangibles, (Citing Cases), at least in the absence of activities identifying them with some other place as their 'business situs.' But it is plain that the business which appellant carries on in Minnesota, or directs from its offices maintained there, is sufficiently identified with Minnesota to establish a 'commercial domicile' there, and to give a business situs there, for purposes of taxation, to intangibles which are used in the business or are incidental to it, and have thus 'become integral parts of some local business.' (Citing Cases). . . .

"The doctrine that intangibles may be taxed at their business situs, as distinguished from the legal domicile of their owner has usually been applied to obligations to

pay money, acquired in the course of a localized business (Citing Cases). But it is equally applicable to shares of corporate stock which, because of their use in a business of the owner, may be treated as localized, for purposes of taxation, at the place of the business. See *First National Bank* v. *Maine*, 284 U. S. 312; 52 S. Ct. 174; 76 L. Ed. 313, 77 A. L. R. 1401; cf. *De Ganay* v. *Lederer*, 250 U. S. 376, 39 S. Ct. 524, 63 L. Ed. 1042. Appellant's entire business in Minnesota is founded on its ownership of the shares of stock and their use as instruments of corporate control. They are as much 'integral parts' of the local business as accounts receivable in a merchandising business, or the bank accounts in which the proceeds of the accounts receivable are deposited upon collection. Compare *Wheeling Steel Corp.* v. *Fox*, 298 U. S. 193, 56 S. Ct. 773, 80 L. Ed. 1143. Thus identified with the business conducted by appellant in Minnesota, they are subject to local property taxes as they would be if the owner were a private individual domiciled in the state.''

The court held that it was not a denial of due process because the defendant also had to pay other states a tax on part of the stock upon which Minnesota was now levying its tax. At page 680 of 57 S. Ct. the court says on this point: ''But we have recently had occasion to point out that enjoyment by the resident of a state of the protection of its laws is inseparable from responsibilities for sharing the costs of its government, and that a tax measured by the value of rights protected is but an equitable method of distributing the burdens of government among those who are privileged to enjoy its benefits. See *People of the State of New York ex rel. Cohn* v. *Graves*, 300 U. S. 308, 57 S. Ct. 466, 81 L. Ed. 666, 108 A. L. R. 721.

''The economic advantages realized through the protection, at the place of domicile, of the ownership of rights in intangibles, the value of which is made the measure of the tax, bear a direct relationship to the distribution of burdens which the tax effects. These considerations support the taxation of intangibles at the place of domicile, at least where they are not shown to have

acquired a business situs elsewhere, as a proper exercise of the power of government. Like considerations support their taxation at their business situs, for it is there that the owner in every practical sense invokes and enjoys the protection of the laws, and in consequence realizes the economic advantages of his ownership. We cannot say that there is any want of due process in the taxation of the corporate shares in Minnesota, irrespective of the extent of the control over them which the due process clause may save to the states of incorporation.''

See, also, *Cheney Bros. Co., et al.,* v. *Commonwealth,* 246 U. S. 147, 38 S. Ct. 295, 62 L. Ed. 632; *Smith* v. *Ajax Pipe Line Co.,* 87 Fed. 2d 567.

On the whole case, no error appearing, the decree is affirmed.